■ In the Matter of MARY E. BUCKHOUT, Respondent, v NEW YORK CITY COMMISSION ON HUMAN RIGHTS et al., Appellants. [609 NYS2d 608] —Order of the Supreme Court, New York County (Carol Arber, J.), entered January 11, 1993, which vacated the final decision of the New York City Commission on Human Rights dated March 27, 1992, and which further vacated the recommended decision and order after remand dated September 20, 1991 of Administrative Law Judge Katherine C. Edgell and which remanded the matter to the Commission, unanimously reversed, on the law, and the petition dismissed, without costs.

According to the findings of respondent New York City Commission of Human Rights, petitioner Mary Ellen Buckhout was hired by respondent Gallo in July 1981. She was hired through a temporary employment agency as an independent contractor to perform various bookkeeping tasks in order to reduce an office backlog. Her responsibilities and status remained the same throughout 1981 and 1982. Indeed, when in mid-1982 she asked to be placed on the Gallo payroll, her request was denied.

On December 6, 1982, respondent Steve Perrin was hired as comptroller of Gallo. He was assigned certain managerial goals involving the streamlining of the accounting department, specifically, the elimination of at least one if not two of the temporary positions.

In January 1983, petitioner again requested to be placed on the payroll as a regular employee. Perrin testified that, in February or March 1983, he agreed to petitioner's request because he knew that she did not meet the Internal Revenue Service's definition of "independent contractor". Petitioner was then entitled to receive all of the benefits generally available to permanent, full-time employees.

Petitioner testified that Perrin told her that her employment status had become "permanent" and that she would be given more sophisticated tasks such as learning to compute the "beverage tax", a claim which Perrin denied. Mr. Gueverra, the person petitioner asserted was told to train her for this task, denied that he was ever directed to do so. Another manager, Mr. Pikiel, and Perrin both testified that petitioner's tasks did not change with her payroll status.

In March 1983, Frank Schraff, another temporary employee

in the accounting department, was replaced by Mark Cohen who, like petitioner, was hired through a temporary employment agency as a cost-saving measure. Perrin testified that he was taken with Mr. Cohen's talents, and Gallo later paid a fee to the temporary agency to hire him outright. Perrin testified that because Cohen was exceptionally talented while petitioner was merely satisfactory, petitioner's position was the one eventually eliminated. He stated that, in the spring of 1983, there had been ongoing discussions with Gallo's vice president, Mark Bloom, about eliminating employees hired in a temporary capacity and that, in the summer, Bloom specifically indicated that he wanted petitioner off the payroll. Respondents introduced a memorandum from Perrin to Bloom dated July 28, 1983, stating that he had decided to eliminate petitioner's position on or about September 30, 1983. During that summer, Perrin had petitioner teach Mr. Cohen some of the tasks she performed which, Perrin asserted, was in anticipation of her eventual termination. Perrin put Cohen on the regular payroll in August 1983.

Petitioner was diagnosed with breast cancer on or about September 27, 1983 and underwent surgery the next day. She testified that, upon learning of her illness, Perrin led her to believe that her job would be waiting for her upon her return. Perrin testified that, although he planned to dismiss petitioner, when he learned of her illness he did not want to tell her about her impending dismissal lest the bad news affect her recovery and therefore waited until her condition was improved. Out of sympathy, Perrin also arranged for petitioner to receive her full salary for the nine-week period of her recuperation, even though the company had no sick leave policy. In November 1983, petitioner was notified that she had been terminated effective September 30th of that year.

Subsequently, Gallo's accounting department functioned with the remaining eight full-time employees until late 1985, when an increased workload prompted the hiring of additional workers. Petitioner's duties were reassigned to Mr. Cohen and other employees.

In a recommended decision and order dated June 29, 1990, Administrative Law Judge (ALJ) Cheryl Howard dismissed petitioner's complaint in all respects. She found that Gallo "articulated legitimate, nondiscriminatory reasons" for terminating petitioner, finding the record devoid of credible evidence that Gallo's grounds were merely pretextual. By contrast, she noted petitioner's "lack of forthrightness" and characterized her as "an unreliable witness". ALJ Howard there-

fore concluded that respondents did not terminate petitioner because of her handicap in violation of Administrative Code of the City of New York § 8-107 (1) (a) and § 8-108 (now § 8-107 [15]).

Petitioner appealed to the Commission on Human Rights which, in a decision and order dated June 5, 1991, remanded the matter to a second Administrative Law Judge for further consideration of the permanent or temporary nature of her employment, its significance in the context of this dispute and any further analysis as might be appropriate. Thereafter, Administrative Law Judge Katherine C. Edgell received further comments from both petitioner and respondent Gallo. Considering these new submissions, but without receiving further testimony, she analyzed petitioner's employment status and arrived at the same conclusion as her predecessor. In a decision and order dated March 27, 1992, the Commission adopted these findings and dismissed the complaint.

Petitioner brought the subject CPLR article 78 proceeding, claiming that the Commission arbitrarily and capriciously denied her claim of discrimination based on illness. Supreme Court vacated the Commission's determination and purported to vacate the recommended decision and order after remand of ALJ Edgell, remanding the matter to the agency for reconsideration by ALJ Howard. The court reasoned that the procedure upon remand did not "comply with the mandate of the Commissioner to further consider and analyze complainant's employment status."

We note that CPLR 7801 (1) provides only for review of final orders (Matter of Cohoes Mem. Hosp. v Department of Health, 48 NY2d 583). Moreover, it was solely within the province of the Commission to determine if the procedure utilized upon its remand of the case for further consideration adequately complied with its order.

The issue in this proceeding is whether the determination of the Commission on Human Rights is supported by substantial evidence (CPLR 7803 [4]; Burlington Indus. v New York City Human Rights Commn., 82 AD2d 415, 417), a question which Supreme Court is without authority to entertain (CPLR 7804 [g]). However, in reviewing the matter, whether by transfer or appeal, this Court is mandated to "dispose of all issues in the proceeding" where sufficient papers are presented (ibid.). Judicial review of the determination "is limited to a consideration of whether that resolution was supported by substantial evidence upon the whole record" (300 Gramatan Ave. Assocs. v State Div. of Human Rights, 45 NY2d 176, 181). The appropri-

ate criterion to be applied is whether a rational basis exists " 'for the findings of fact supporting the agency's decision' " *(supra,* at 182).

We find that the record in this matter, which exceeds 1700 pages in length, amply supports the determination reached by the Commission. The credible testimony establishes that petitioner was dismissed for reasons of economy and that the decision to terminate her employment was reached before respondent Gallo learned of her medical condition. It is significant that petitioner was originally hired in a temporary capacity, that the other temporary employee in the accounting department was also dismissed and that petitioner's position was not filled for some two years after her termination. Her employer's humanitarian gesture of continuing petitioner's salary during the nine weeks of her convalescence should not operate to its prejudice. Concur—Rosenberger, J. P., Kupferman, Rubin and Williams, JJ.